# NANCY E. WORRELL *et al.*

## *v.*

## PRISCILLA FORSYTH.

*Filed at Springfield March 26, 1892.*

1. HUSBAND AND WIFE—*right to contract with each other.* Section 6 of the act of March 30, 1874, relating to husband and wife, which provides that "contracts may be made and liabilities incurred by a wife, and the same enforced against her, to the same extent and in the same manner as if she were unmarried," except that she can not enter into or carry on any partnership business without the consent of her husband, unless he has abandoned her, etc., is broad enough in its language to authorize contracts between husband and wife for lawful purposes not embraced within the exceptions of the act itself.

2. SAME—*ante-nuptial contract—power of substitution by agreement.* By an ante-nuptial contract it was agreed that if the marriage was consummated and the wife should survive the husband, she was to have a certain described eighty acres of land and $500 in money out of his estate as her marriage portion in lieu of all other rights in and to his estate. After the marriage the husband sold the eighty acres mentioned, and. his wife joined in the deed therefor to the purchaser in consideration of the agreement of the husband to give her another eighty acres of land of equal value, and at the same time the husband and wife conveyed the latter tract to a trustee, in trust for the husband during his life, but to be conveyed to the wife if she survived him: *Held,* that it was competent for the husband and wife to enter into the contract for the substitution of another tract of land in place of that first given to the wife.

3. SAME—*ante-nuptial contract—not annulled by an agreement to substitute land to be conveyed.* Where a wife before her marriage accepts a sealed agreement of the husband for the conveyance of a tract of land, to be made on his death, in lieu of all dower in his lands and all claims on his estate, a parol agreement between them for the substitution of another more valuable tract, when executed by her joining with the husband in a conveyance of the first tract to a purchaser and the execution of his deed for the second tract to a trustee, by which the latter is to convey the same to her on the husband's death, will be valid and binding on her, and such substitution will not abrogate the ante-nuptial contract, and restore her rights to dower, etc., on his death.

4. SEALED INSTRUMENT—*recovery on, defeated by proof of an executed parol substitute agreement.* An executed parol agreement may be shown

to defeat a recovery upon an instrument under seal. If the new parol agreement, even though it may be without consideration, has been executed, and one of the parties thereto has been led into a line of conduct which must be prejudicial to his interests, an equitable estoppel will arise in his favor.

5. PAROL EVIDENCE—*admissible to show true consideration of a deed.* Parol evidence is admissible to show the true consideration of a deed, although it may be different from that named in the instrument.

6. So where a wife has an equitable right to a deed for a tract of land of her husband in case she survives him, and joins in his deed of such land to a purchaser, but receives no part of the purchase money, it may be shown by parol evidence that she received and accepted a deed to a third person as trustee, for her benefit, for another tract of land, and in lieu of the tract first named.

APPEAL from the Circuit Court of Hancock county; the Hon. CHARLES J. SCOFIELD, Judge, presiding.

Mr. GEORGE EDMUNDS, and Messrs. D. MACK & SON, for the appellants:

The consideration expressed in a deed may be shown to be different by parol evidence. *Life Ins. Co.* v. *Kirchoff*, 133 Ill. 368; *Primm* v. *Legg*, 67 id. 500; *Booth* v. *Hynes*, 54 id. 363; *Cooke* v. *Murphy*, 70 id. 99.

The consideration, the delivery and acceptance of the instrument, the purpose or object for which it was given, are collateral facts *dehors* the writing itself that may be proved by parol evidence. *Memory* v. *Niepert*, 131 Ill. 631; *Hutchins* v. *Hubbard*, 34 N. Y. 24; *Brick* v. *Brick*, 98 U. S. 514.

Contracts may be made and liabilities incurred and enforced against a wife to the same extent as if she were unmarried. Rev. Stat. 1889, chap. 68, sec. 6.

Appellee having executed the deed to McGill, and in consideration thereof taken and retained other property in lieu of it, is estopped to claim that the marriage contract is revoked. *Hill* v. *Blackwelder*, 113 Ill. 292; *Kinnear* v. *Mackey*, 85 id. 96.

The appellee having taken the land conveyed in trust for her, under the agreement to receive it in place of the land

named in the ante-nuptial contract, and that agreement having been fully executed, the estoppel became fixed by the execution of the agreement. The mutual consent of the parties to the substitution of one tract for the other shows, not an intention to rescind, but to abide by the contract. The fact was so agreed, and so it shall stand, by the law of equitable estoppel, with its legitimate consequences to the parties and privies. Bigelow on Estoppel, 460.

Messrs. O'HARA, SCOFIELD & HARTZELL, for the appellee:

The ante-nuptial contract being under seal, no change or modification can be shown by parol evidence. *Chapman* v. *McGrew*, 20 Ill. 101; *Hume* v. *Taylor*, 63 id. 43; *Barnett* v. *Barnes*, 73 id. 216; *Loach* v. *Farnum*, 90 id. 368; *Gilbert* v. *Coons*, 37 Ill. App. 448; *Reeves* v. *Hyde*, 14 id. 233; *Life Assurance Society* v. *Smith*, 25 id. 471; *Breher* v. *Reese*, 17 id. 545; *Railroad Co.* v. *Railroad Co.* 23 id. 531.

Parol evidence is not admissible to change or vary the terms of a written contract. 2 Pomeroy's Eq. Jur. sec. 858; Greenleaf on Evidence, 267, 268; *Barnett* v. *Barnes*, 73 Ill. 216; *Loach* v. *Farnum*, 90 id. 368; *Purington* v. *Railroad Co.* 40 id. 297; *McAnnulty* v. *McAnnulty*, 120 id. 34.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the Court:

Alpha Forsyth died intestate on September 4, 1891, leaving a widow, Priscilla Forsyth, the appellee herein, and two daughters and two grandchildren, the issue of a former marriage, who, together with the husband of one of the daughters, are the appellants herein. This bill, filed by said heirs, against the said widow and certain tenants, is for the partition of lands owned by the deceased at the time of his death, and for the setting off of the widow's homestead. The bill alleges, that the deceased, on August 19, 1886, and before his marriage with appellee, whose maiden name was Carrier, entered into

an ante-nuptial contract in writing with her, in and by which it was agreed that, if the marriage should be consummated and she should survive him, she was to have 80 acres of land in Adams County, and $500.00 in money, out of his estate, as and for her marriage portion, to be hers in lieu of homestead, dower and all other rights in and to his estate, he covenanting for himself, his heirs and assigns with her and her heirs and assigns, that said 80 acres should be conveyed to her by a good and sufficient deed, and authorizing her, in case any of his children or grandchildren should refuse to make such deed, to take such steps in chancery as might be necessary, the expense thereof to be paid out of his estate; and, in consideration of the premises, she agreed that she would never claim or attempt to claim any widow's award out of his estate, or homestead right in it, "or dower interest in his other lands or any other share of his personal estate;" and in and by which contract it was provided, that "this contract is not to be construed so as to prevent said Alpha Forsyth from making any other gift or bequest to said Priscilla Carrier if he desires so to do." The contract was signed by the deceased and appellee under their respective seals. The bill further alleges, that the deceased and appellee, after their marriage, and on March 18, 1891, agreed to change part of the consideration, for which she had entered into the contract, and to substitute another tract of 80 acres in Hancock County of greater value in place of the 80 acres described in the ante-nuptial contract; that, to carry out said substitution as agreed between them, the deceased executed a warrantee deed of the Hancock County land, for an expressed consideration of $4000.00, to one Adams, in trust for the following purposes: that the deceased should receive the rents and profits during his lifetime, and in case his wife, Priscilla, should survive him, then Adams should, upon his death, convey to her in fee simple said Hancock County land, but in case of her death before the death of her husband, the trustee, Adams, should convey

it to the deceased. Appellee joined in the execution and acknowledgment of the deed to Adams. The bill further alleges, that, on the same day, March 18, 1891, the appellee joined her husband in executing a deed of the Adams County land, for a consideration of $4000.00, to one McGill, "in order to establish by written evidence over her hand and seal her agreement to make, and her full consent to, said change and substitution;" that the widow claims all the rights given to widows by the statute, the same as if no ante-nuptial contract existed; that she has taken and recorded a deed of said Hancock County land from said Adams to herself, and is in possession of said land; that she is not entitled to dower in the other lands of the deceased, and that her claim thereto is in fraud of the rights of complainants; that she is entitled to homestead in the land, on which she and her husband resided when he died. The original bill was filed on September 24, 1891, and on October 12, 1891, before it was answered, complainants filed a supplemental bill, alleging that on October 3, 1891, they tendered said sum of $500.00 as and for the money to be paid out of said estate on said contract.

The answer of the widow admits the tender, the execution of the ante-nuptial contract and of the deeds to McGill and Adams and also of the deed to her by Adams, as trustee, since her husband's death, but denies the agreement to change a part of the consideration, or to substitute the Hancock County land for the Adams County land, and claims that the land described in the deed to Adams was a gift to her from her husband, and not in substitution for the land named in the contract; and avers that her husband desired to sell the Adams County land to McGill, and, at his request, she united in a deed with him to McGill; that he stated to her, "that upon his death she should take the share and interest in his estate allowed or given to her by law;" that she "thereupon with the understanding and agreement, that, in the place and stead of said land, she would receive her full share in the estate of

said Alpha Forsyth upon his death, including her dower in his real estate, executed said deed  *  *  *  to said McGill  *  *  *  and that said Alpha received from said McGill the consideration for said deed;" that, by the deed to McGill, the ante-nuptial contract was abrogated and became null and void; that the deed to Adams, trustee, was made in pursuance of an agreement therefor with her husband because of her services in nursing and caring for him and looking after his business; that she is not barred of her dower, but entitled to have the same set off to her. The answer does not set up the statute of frauds.

The first question in the case is a question of fact: did Mr. and Mrs. Forsyth agree, that the 80 acres in Hancock County should be substituted for the 80 acres in Adams County described in the ante-nuptial contract, and were the deeds to McGill as purchaser of the latter tract, and to Adams as trustee to hold the former tract for the purposes above named, executed in pursuance of such agreement, and in order to carry the same into effect? After a careful perusal of all the evidence in the record, we are satisfied that there was such an agreement, and that said deeds were made in pursuance of it. This conclusion is sustained by the testimony of McGill, Mack and Adams, the latter having been called as a witness by the defendant below. The statements of these witnesses are confirmed by many significant facts and circumstances.

McGill wanted to buy the tract of 80 acres in Adams County, and was told by Mr. and Mrs. Forsyth, that it could not be sold to him because it was to become hers at her husband's death under the terms of the ante-nuptial contract. She declined to unite in a deed of this land to McGill, unless, in the place of it, another tract of equal value should be secured to her. The proof shows, that the tract of 80 acres in Hancock County was of equal value with that in Adams County, if not of greater value, and that she was willing to accept the former

in lieu of the latter; but she declined to do anything in the matter, until she had consulted an attorney in Ohio, who was a relative of hers, as to the mode of securing to her the substituted tract. This gentleman advised, that a conveyance be made to a trustee; and the deed to Adams, whom she selected to act as trustee, was made because of such advice.

On March 18, 1891, Mr. and Mrs. Forsyth and Adams went to Carthage to the office of an attorney. It would appear, that Mr. Forsyth was there alone at one time during the day, and at another time, that he and his wife were there together, and at another that they and Adams were there together. The two deeds, both dated on March 18, one to McGill and one to Adams, as trustee, were there executed at the same time, and the deed to Adams was then delivered to him. Appellee refused to sign the deed to McGill, unless the deed to Adams should be then executed and delivered. McGill paid $4000.00 to Forsyth for the Adams County land; the quitclaim deed made to him on that day was left at a bank, which received the same and paid over the money, McGill being then sick. In the May following Mr. and Mrs. Forsyth, at McGill's request, executed a warranty deed in place of the quitclaim deed. The sale to McGill and the conveyance in trust to Adams constituted one transaction. Adams, defendant's witness, swears that the deed to Adams was the consideration received by defendant for signing the deed to McGill.

The only testimony introduced by the defendant was that of three men named Clark, Plowman and Rust, who worked upon the deceased's farm. As the deceased was about to go to Carthage on March 17, 1891, to have the deeds executed, he went to the barn where Clark and Plowman were, and asked one to get his team ready, and the other to go to Adams and ask the latter to meet him the next day at Carthage. Clark and Plowman swear, that he then said, that he was going to town to have some deeds made, and was going to make his wife a present of the 80 acre tract with the "old cabin" on it

in Hancock County. Rust also swears, that one day in February the deceased was in a wagon with him, while he was going after a load of wheat, and then told him that he was going to make his wife a present of a piece of land. But we do not regard this evidence as conflicting with that of the witnesses, who swear to what took place the next day when the deeds were made, and to what was agreed upon before that time. A man like the deceased, who was unlearned in the law, would naturally speak of a conveyance to his wife, made under the circumstances above set forth, as a "present," just as he would regard the original ante-nuptial agreement as providing for a "present;" nor would he be apt to enter into the details of such a transaction in talking with the workmen upon his farm, but would refer to it in a general way only.

It is, however, claimed by the appellee, that all the testimony, going to show a verbal agreement for the substitution of the one tract of land for the other, was incompetent and should not have been admitted, on the alleged ground that the ante-nuptial contract was an executory agreement under seal, and that the terms of such an agreement can not be altered, changed or varied by parol testimony.

The sixth section of the Act of March 30, 1874, "to revise the law in relation to husband and wife," (1 Starr & Cur. Stat. page 1272) provides, that "contracts may be made and liabilities incurred by a wife, and the same enforced against her, to the same extent and in the same manner as if she were unmarried," except that she cannot enter into or carry on any partnership business without the consent of her husband, unless he has abandoned or deserted her, or is idiotic, or insane, or confined to the penitentiary. We have held, that the language of this section is broad enough to authorize contracts between husband and wife for lawful purposes not embraced within the exceptions of the Act itself. (*Hamilton* v. *Hamilton*, 89 Ill. 349; Stewart on Husband and Wife, sec. 43, note 22, and cases there cited.)

If the change made by the substitution of the one tract for the other—which was consummated by the execution at the same time of two instruments under seal, towit: the deed to McGill and the deed to Adams, as trustee—should be regarded as a parol agreement entered into for the purpose of modifying an executory contract under seal, it is nevertheless true that such parol agreement has been executed in full. An executed parol agreement may be shown to defeat a recovery upon an instrument under seal. If the new parol agreement, even though it be without consideration, has been executed, and, by means thereof, one of the parties thereto has been led into a line of conduct which must be prejudicial to his interests, an equitable estoppel arises in his favor. (*White* v. *Walker,* 31 Ill. 422; *Loach* v. *Farnum,* 90 id. 368; *Cooke* v. *Murphy,* 70 id. 99; *Dearborn* v. *Cross,* 7 Cowen, 48; 1 Greenl. on Ev. (14th ed.) sec. 302, note 1, and sec. 303; Bigelow on Estoppel, (5th ed.) pages 684-685; *Swanzey* v. *Moore,* 22 Ill. 63; *Wheeler* v. *Frankenthal,* 78 id. 124.) In the case at bar, the deed of the substituted tract of land made to appellee's trustee was delivered to and accepted by him. The title to that tract passed out of Forsyth and beyond his control in his life time, except as to the right to take the rents and profits thereof while he lived. Since his death the trustee has conveyed the land to appellee, and she has accepted and recorded the conveyance, and taken possession of the premises. Here was a complete execution of the parol contract for substitution; and the acceptance by the appellee of the trustee's deed, taken in connection with the tender of the $500.00 which has been kept good, constitutes a full execution of the ante-nuptial agreement. It is admitted by the appellee, that the ante-nuptial contract was sufficient to bar the dower, if it was not abrogated by the conveyance to McGill. It is admitted by appellants, that appellee's right of homestead is not barred by the contract, under the decisions of this Court.

The execution of the deed to McGill did not abrogate the ante-nuptial contract. The obligation to pay the $500.00 remained. By the contract a deed of one tract of 80 acres was to be made to appellee at her husband's death by his heirs, or by a commissioner appointed by a court of chancery; by the terms of the trust deed, a deed of another tract of 80 acres of equal value was to be made to her at her husband's death by a trustee. The provisions of the trust deed for a conveyance to her at her husband's death were just as much subject to the terms of the ante-nuptial contract as were the provisions in that contract for a conveyance to her at her husband's death. The provisions in the two instruments for deeds at his death were based upon the same consideration.

Before the deed of the Adams County tract was made to McGill, the appellee had the equitable right to a deed of the fee thereof in the event that her husband should die before she died. By joining in that deed, she parted with a valuable interest under the ante-nuptial contract; and it is conceded that she received no part of the $4000.00 paid by McGill to her husband. What consideration did she receive for joining in that deed? Parol evidence may be introduced to show the true consideration of a deed, although it may be different from that named in the instrument. (*Union Mut. Life Ins. Co.* v. *Kirchoff*, 133 Ill. 368.) The appellee claimed in her answer, that the consideration, which she received for joining in that deed, was an agreement by her husband, that she should have dower, and her full interest as widow, in his estate; but there is no proof of any such agreement. It was proper for appellants to introduce parol evidence to show, that she received and accepted the deed to Adams as a consideration for joining in the deed to McGill, and that the deed to Adams was not a gift, as claimed by appellee in her answer, but that the real consideration of that deed, which was expressed therein as being $4000.00, was, as matter of fact, the conveyance of the Adams County land to McGill.

The decree of the Circuit Court, in so far as it holds appellee to be entitled to dower in the lands described in the bill, and in so far as it orders the partition thereof to be made subject to dower, is, in our opinion, erroneous. We think the appellee's dower is barred.

The decree of the Circuit Court is accordingly reversed and the cause is remanded to that Court with directions to proceed in accordance with the views herein expressed.

*Decree reversed.*