## George M. Peck v. McCormick Harvesting Machine Co.

1. RECOUPMENT—*Damages for Breach of a Contract Void by the
Statute of Frauds.*—No recoupment can be had for damages for the
breach of an oral contract which can not be enforced under the statute
of frauds.

Assumpsit, on a promissory note. Appeal from the Superior Court
of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard
in this court at the October term, 1900. Affirmed. Opinion filed May
6, 1901.

**Statement.**—This suit was brought by appellee against
appellant to recover the amount due upon a promissory
note made by S. W. Chapman as principal maker and by
appellant as guarantor. No question was raised as to the
right of recovery upon the note save as it was sought to recoup for an amount due to Chapman, the principal maker of
the note, for damages for the breach of the contract, in
part performance of which Chapman and appellant had executed the note. No plea going to the consideration of the
note was interposed. After much pleading the cause went
to trial upon one special count upon the note, the common counts and the general issue pleaded thereto. Under
the general issue appellant sought to avail of the recoupment.

The contract, in part performance of which the note was
given, was established by the uncontroverted testimony of
S. W. Chapman. He testified to conversations with McCor-

mick, the president of appellee, in the course of which the respective engagements of the parties were settled, and which constitute the oral contract for breach of which the claim to a right of recoupment is made. The testimony is substantially as follows:

"McCormick said, 'What are we going to do with the Elgin goods—buggies, wagons, machines, outside of their make? we can not put a new man in there and continue that business, what are we going to do with it?' I said, 'Mr. McCormick, under certain conditions I might be inclined to buy that myself. It takes a great deal of money to run that business. If I can have a long time to pay for it, and a low rate of interest, and can have the exclusive sales of the machines during the time until these notes are paid, and the use of the warehouse which I hold the lease of from the railroad company (which I built for them, situated on the Northwestern railway lands at Elgin, which I had a lease of before I went to work for them);' that I should have the exclusive sale of their machines in Elgin during the life of these notes that I was to give, and would give them my brother and brother-in-law, George M. Peck, the defendant herein, as security on the notes. The territory I referred to was that already defined, same as it always has been, as I have stated it. Mr. McCormick says, 'We want you to continue one of the family and you will sell our machines locally at Elgin and vicinity exclusively.' He said that he wished me to continue one of the family and sell their machines at Elgin, if I bought the business, which included the old territory. I was to continue selling their machinery there, if they sold me these goods at Elgin, and vicinity, as it had been for years. I think he said they would not think of selling to me without I did, or something to that effect; told me to go ahead and take the inventory, which I did, and wrote out these notes and had my brother and brother-in-law sign them, took them in there and they were passed to my credit. One of those notes is the one now sued on; the rest have all been paid." * * *

Q. "Let me ask you, Mr. Chapman, what was the custom of the plaintiff company as to making annual contracts with these agents as to handling these goods?"

A. "Annuals were made for years with every local agent; a new contract every year which covered Elgin and vicinity or Freeport and vicinity. * * * I had a written contract with the plaintiff for each of those years or I could not have sold their goods. * * * I named to him

my conditions, and he told me to go ahead and make out the inventory. I was to be a local agent, sell on commission and make my own contracts. The matter of proceeding with the business I supposed would be reduced to writing. The commissions were regulated each year, from year to year, because they changed. Some years the prices were lower than others, so nothing was said about commissions or price of machinery, but my compensation was to be commissions with the exception of twine, and twine, I think, was to be purchased.   *   *   *   The contract does not specify what he agreed to do at the time I made my proposition and took the inventory. He agreed to the proposition I then made; said I would have to make an annual contract the same as every local agent, but not as a general agent."

It is established by the further testimony of Chapman, and is not controverted, that the appellee violated the terms of this oral contract, in that it invaded the territory, exclusive right to which was awarded Chapman by the contract. In 1893, 1894 and 1895, annual written contracts were made for each year and the terms of the oral contract were fulfilled upon both sides. But in 1896, although an annual written contract was made for that year, fixing commissions, yet in that year the terms of the oral agreement were violated by appellee, in that another agency was established within the territory to which Chapman had exclusive right. In 1897 appellee refused to make any annual contract, and Chapman was deprived altogether of any right to sell the goods of appellee.

All of the notes given by Chapman were paid, except the one upon which this suit was brought.

At the conclusion of the presenting of evidence, the trial court instructed the jury peremptorily to return a verdict for plaintiff, appellee.

From judgment upon the verdict this appeal is prosecuted.

CUTTING, CASTLE & WILLIAMS, attorneys for appellant; R. N. BOTSFORD, of counsel.

JOHN C. EDWARDS and WILLIAM T. UNDERWOOD, attorneys for appellee.

Mr. Justice Sears delivered the opinion of the court.

By the peremptory instruction given to the jury to return a verdict for appellee, the trial court determined as matter of law that under the evidence there could be no valid claim to recoupment.    The oral contract and breach of it by appellee is established.

The right to recoup for a breach of this contract is attacked by appellee upon two grounds, viz : First, that the oral contract was merely a contract to make five several annual written contracts; and because the terms of the proposed written contracts were undetermined, therefore the oral contract was so lacking in certainty as to be not enforceable; and, secondly, that the oral contract not being possible to be fully performed in one year from the time of the making of it upon the part of either party, it is within the statute of frauds.

We are of opinion that the direction of the verdict by the court can not be justified upon the ground first noted. It is true, as a general rule, that when the terms of an agreement are left so uncertain as to require a further convention of the parties to make it complete, and the terms left for future agreement are essential, then no contract is made which is enforceable.    In other words, an agreement is not enforceable as a contract, because of its uncertainty, when any of its essential terms are left unsettled.    If the contract here relied upon be treated merely as an oral agreement to make a written contract, and the breach sued for be merely the default in making such written contract, then the rule invoked might apply.    But we do not so view the oral contract.    It was not alone an undertaking to make written contracts for the several years covered by its terms; it was an agreement upon the one part to serve as agent for five years, the period covered by the notes, and to give guaranteed notes as purchase price of certain goods, and upon the other side an agreement to give exclusive right to sell the appellee's manufactures within the territory named and use of a certain warehouse.    It is true that in carrying out this contract it would become necessary

from year to year to enter into a further agreement as to the rate of commissions. But as applied to the year 1896, this had been done; all details had been fixed by agreement for that year; the guaranteed notes had been given, and nothing remained but the rendering of service as agent by Chapman and the granting of exclusive right to sell the goods by appellee, together with the use of warehouse.

The breach and the damages sought to be availed of in recoupment were in part for an invasion of this exclusive right to sell the goods in the territory named in the year 1896. It is established that in 1896 the appellee sold its manufactures within Chapman's territory, contrary to the terms of the oral contract. There are no uncertainties remaining as to the terms of the service of Chapman in 1896, which could operate to make the contract void for uncertainty. Appellee could not be heard to assert as a defense for violating its agreement to give Chapman exclusive right in that year, that possibly the parties might not agree as to the commissions or other details of the agency. Nor is it altogether clear that there could be no recoupment for the breach of the oral agreement in 1897, upon this ground. The annual contracts are shown to have been such as the company made from year to year with all its local agents. If appellee had tendered such a contract and Chapman had declined it, the position would be different. But having simply broken the agreement altogether, it is a defense of doubtful validity that the details of the agency were unsettled and uncertain. That question, however, it becomes unnecessary to determine by reason of the consideration of the second ground of objection to a recoupment. That ground is that the oral contract is within the provision of the statute of frauds. We see no escape from the force of this contention. The contract was not to be performed within one year, but extended over five years. It is not in writing. Nor can it be held that there has been a complete performance by Chapman of his engagements. It is true that the guaranteed notes were given. But the one consideration which, according to Chapman's

testimony, moved the appellee to the making of the contract, was that Chapman should serve as agent for the period of five years, or, as he expresses it in his testimony, "during the life of these notes." He testified that the president of appellee said "they would not think of selling to me without I did, or something to that effect." There has been no complete performance by Chapman of this essential part of his agreement. A partial performance may sometimes avail to avoid an application of the statute in equity; but the rule does not obtain at law. Warner v. Hale, 65 Ill. 395; Wheeler v. Frankenthal, 78 Ill. 124; The C. A. Co. v. The D. S. M. Co., 142 Ill. 171; Marr v. Ray, 151 Ill. 340; Leavitt v. Stern, 159 Ill. 526; Browne on Statute of Frauds (4th Ed.), p. 350.

It is a harsh rule in its application to this case and works an apparent injustice to appellant and to Chapman, who had performed his part of the agreement in so far as he was permitted to by appellee, and who was prevented from performing in full by the disregard of appellee for its oral agreement. But in a court of law this state of facts affords no ground for avoiding the application of the statute. We are of opinion that under the statute of frauds the oral agreement between appellee and Chapman can not be enforced, and hence that no recoupment could be had for damages for breach of it by appellee. The breach could no more be availed of by recoupment than if an action at law had been brought by Chapman to recover his damages for the breach. McGinnis v. Fernandes, 126 Ill. 228. Therefore the trial court properly directed the verdict.

The judgment is affirmed.